# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| KERRI COPPOCK F/K/A<br>KERRI LYNN HARBOUR AND<br>JASON D. DUPCHAK, II<br>       Plaintiffs<br><br>v.<br><br>DOUG'S CORNER, INC.<br>       Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br>Case No. 5:21-cv-43-RWS-JBB |

_____

| | |
|---|---|
| DOUG'S CORNER, INC.<br>       Third-party Plaintiff and<br>       Counterclaim Defendant<br><br>v.<br><br>TEXTRON, INC. D/B/A E-Z-GO,<br>EXCEL TIRE & WHEEL CORP.,<br>DENNY HOOVER, AND ROXANNE<br>HOOVER<br>       Third-party Defendants and<br>       Counterclaimant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

_____

| | |
|---|---|
| TEXTRON, INC. D/B/A E-Z-GO<br>       Fourth-party Plaintiff<br><br>v.<br><br>NIVEL PARTS & MANUFACTURING<br>CO., LLC F/K/A JAKE'S<br>       Fourth-party Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

---

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

---

1

# Contents

I.    BACKGROUND ................................................................................................... 3

    A.    The incident, generally .............................................................................. 3

    B.    The three lawsuits...................................................................................... 3

    C.    The Parties' Allegations in the Texas Lawsuit ......................................... 4

    D.    Nivel's Motion to Dismiss ...................................................................... 10

II.    LEGAL STANDARDS ..................................................................................... 11

    A.    FED. R. CIV. P. 14................................................................................. 11

    B.    FED. R. CIV. P. 12(b)(6) ....................................................................... 12

III.  E-Z-GO'S CLAIM FOR STATUTORY INDEMNITY UNDER TEXAS CIVIL PRACTICE AND REMEDIES CODE CHAPTER 82 ..................................................................... 13

    A.    Parties' assertions ................................................................................... 13

    B.    Applicable law......................................................................................... 14

    C.    Discussion ............................................................................................... 17

IV.  E-Z-GO'S REMAINING CLAIMS ................................................................. 24

    A.    E-Z-GO's "tort" and contribution claims against Nivel ....................... 24

    B.    Parties' assertions ................................................................................... 24

    C.    Applicable law......................................................................................... 25

    D.    Discussion ............................................................................................... 27

V.    RECOMMENDATION...................................................................................... 29

The above-entitled and numbered civil action was referred to the undersigned United States Magistrate Judge for pretrial purposes pursuant to 28 U.S.C. § 636. Before the Court is the following pending motion:

**Fourth-Party Defendant Nivel Parts & Manufacturing Co., LLC's ("Nivel") Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Supporting Brief (Dkt. No. 64).**

Nivel Parts & Manufacturing Co., LLC f/k/a Jake's ("Nivel") moves to dismiss all claims against it, which are pled in the fourth-party compliant filed by Textron Inc. d/b/a E-Z-GO ("E-Z-GO" or "Textron") (Dkt. No. 57). The Court, having carefully considered the relevant briefing, recommends the motion be **DENIED**.

## I.    BACKGROUND

### A.    The incident, generally

This lawsuit arises out of single-vehicle accident that occurred on or about August 2, 2016 in Mountain Home, Baxter County, Arkansas. On that date, Jason D. Dupchak, II ("Dupchak") was operating a 2006 E-Z-GO TXT cart (hereinafter "E-Z-GO cart" or "the cart") owned by Denny and Roxanne Hoover when it crashed over a retaining wall on Erin Andeline's property. Kerri Coppock f/k/a Kerri Lynn Harbour and Dupchak ("Plaintiffs") allege Dupchak attempted to steer the E-Z-GO cart to the right to avoid a hole or divot but was unable to turn due to handling and stability defects. Plaintiffs allege the E-Z-GO cart was defective as designed, manufactured, and/or modified, which caused the accident and alleged injuries. The cart was purchased from Doug's Corner, Inc. ("Doug's Corner"), which had acquired it from E-Z-GO.

### B.    The three lawsuits

Plaintiffs subsequently initiated three separate lawsuits against various individuals and entities in Arkansas (filed on August 1, 2018); Rhode Island (filed on July 30, 2019); and Texas

(filed on March 26, 2021) for the injuries and damages allegedly sustained as a result of the August 2, 2016 incident. In each lawsuit, Plaintiffs asserted causes of action for negligence, products liability, and breach of warranties.[1] As explained in more detail below, in the Texas lawsuit, Plaintiffs accused Doug's Corner, who filed a third-party complaint against E-Z-GO, who filed a fourth-party complaint against Nivel.

### C. The Parties' Allegations in the Texas Lawsuit

### 1. Plaintiffs' original complaint against Defendant Doug's Corner

Plaintiffs filed the above cause of action against Defendant Doug's Corner, who allegedly acquired the 2006 E-Z-GO cart from Textron/E-Z-GO. *See* Original Complaint (Dkt. No. 1), ¶ 21 (hereinafter, "Orig. Compl."). Plaintiffs contend the E-Z-GO cart had at least four upgraded features, including "Textron's Premium 4'' E-Z-GO TXT lift kit, which was designed, manufactured, and supplied to Defendant Doug's Corner by Textron" and "Textron's E-Z-GO Convertible (Flip-Flop) Seat Carrier Kit, which was designed, manufactured, and supplied to Defendant Doug's Corner by Textron." *Id.*, ¶ 22; *id.*, ¶ 23 ("Textron's Premium 4'' E-Z-GO TXT lift kit [] was manufactured, designed, and supplied by Textron to Defendant Doug's Corner and

---

[1] In the Arkansas lawsuit, Plaintiffs asserted claims against Doug's Corner, Inc., Textron Inc. d/b/a E-Z-GO, and Excel Tire & Wheel Corp. for strict liability; breach of the implied warranty of fitness for a particular purpose; breach of implied warranty of merchantability; failure to warn; and negligence pertaining to the E-Z-GO cart. Dkt. No. 15, ¶ 16. Plaintiffs also brought claims against Mark Bertel construction, Inc., Bertel Construction Co., Bertel Mark J and Angela M Trustees a/k/a Bertel Mark J and Angela M Bertel Co Trustees, Mark Bertel, Sr., Angela Bertel a/k/a Angie M. Bertel, Erin Andeline, and John Doe Companies A-Z for causes of action pertaining to the property upon which the incident occurred and the subject retaining wall. *Id.*, ¶ 17. E-Z-GO and Doug's Corner were subsequently non-suited in the Arkansas lawsuit without prejudice. *Id.*, ¶ 18.

In the Rhode Island lawsuit, Plaintiffs asserted claims against E-Z-GO and Doug's Corner for strict product liability – defective design, defective manufacturing, and failure to warn; negligent design; negligent manufacture; negligent failure to warn; breach of implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; and negligence. *Id.*, ¶ 21. Doug's Corner was later dismissed from the Rhode Island lawsuit for lack of personal jurisdiction. *Id.*, ¶ 22.

was installed and incorporated into the subject 2006 E-Z-GO TXT Cart by Doug's Corner"). In the complaint, Plaintiffs refer to the lift kit and other modifications installed on the E-Z-GO cart as the "Upgrades"[2] and refer to the upgraded cart as the "Upgraded Cart" or "Upgraded Car." *Id.*, ¶¶ 22, 30.

Specifically regarding Doug's Corner, Plaintiffs alleges as follows: (1) Doug's Corner holds itself out as an authorized Textron E-Z-GO dealer to the public; (2) Doug's Corner routinely buys Textron's products, such as E- Z-GO TXT Carts, lift kits, and convertible seats; and (3) Doug's Corner continuously advertises, markets, distributes and sells Textron products, including E-Z-GO TXT Carts, lift kits, and convertible seats. *Id.*, ¶¶ 31-32, 35.

Plaintiffs allege that Doug's Corner sold the subject E-Z-GO cart as originally designed to a golf course to be used as originally intended as a golf cart. *Id.*, ¶ 36. Plaintiffs allege that on "some unspecified later date, Defendant Doug's Corner regained possession of the same 2006 E-Z-G[O] TXT cart and made" subsequent "Upgrades" which raised the center of gravity of – and changed the handling and stability of – the upgraded cart, rendering the product unsafe and unreasonably dangerous to the average user. *Id.*, ¶¶ 37, 39, 40-41. Plaintiffs further allege that sometime prior to the August 2, 2016 incident, Doug's Corner then resold the upgraded cart to the Hoover family. *Id.*, ¶ 38.

According to Plaintiffs, the E-Z-GO cart, both before and after the upgraded features, had no independent suspension, no seat belts, no roll bar, no doors, no webbing, and no other features to keep occupants from falling out of the car, all of which rendered the product unsafe and

---

[2] According to the complaint, the other upgraded features were four tires and rims which were allegedly designed, manufactured, and supplied by Excel Tire to Doug's Corner and then installed and incorporated by Doug's Corner. Orig. Compl., ¶ 22 (c) (d).

unreasonably dangerous to the average user. *Id.*, ¶¶ 42-47. Plaintiffs further contend the "Upgraded Cart and lift kit were defective and unreasonably dangerous when it was sold by Defendant Doug's Corner." *Id.*, ¶ 48. Plaintiffs maintain that installing the upgraded lift-kit was "a substantial causal factor in producing Plaintiffs' injuries." *Id.*, ¶ 50; *see id.*, ¶ 3 ("Doug's Corner advertised, distributed, and sold Textron products, including the 2006 E-Z-GO TXT Golf Car[] and the updated features to the golf cart at issue in this case that caused catastrophic injury to Plaintiff . . . .").

Pleading in the alternative, Plaintiffs allege Doug's Corner "exercised substantial control over the content of warnings and/or instructions that accompanied the 2006 E-Z-GO TXT; the warnings and/or instructions were inadequate to provide notice to a reasonable user of the risk of harm associated with common use; and the Plaintiffs' harm resulted from the inadequacy of the warnings, specifically, its propensity to roll-over due to its increased center of gravity." *Id.*, ¶ 51. Pleading in the alternative, Plaintiffs allege Doug's Corner made express factual representations about the 2006 E-Z-GO TXT such that a reasonable person would have relied upon them. *Id.*, ¶ 52. Pleading in the alternative, Plaintiffs allege Doug's Corner had actual knowledge of the hazardous stability, handling, and control issues of the 2006 E-Z-GO TXT Cart following the installation of the lift-kit at the time it was sold to Plaintiffs and Plaintiffs' harm resulted from the defect to which Defendant Doug's Corner had actual knowledge. *Id.*, ¶ 53. Plaintiffs further alleges as follows:

> Defendant Doug's Corner altered the 2006 E-Z-GO TXT Cart, such that it produced stability, handling, and control issues which created a higher likelihood to overturn during normal operation of its intended use. Upon information and belief, Defendant Doug's Corner knew about the dangers associated with the altered product but chose not to install and/or incorporate features which would protect the passengers in the instance the 2006 E-Z-GO TXT Cart overturned.

[] Defendant Doug's Corner markets, advertises, and holds out to the public that E-Z-GO TXT Carts, such as the subject Upgraded Cart, are "Not Just For Golf Anymore…."

*Id*., ¶¶ 54-55.

Plaintiffs' original complaint asserts the following against Doug's Corner: (1) strict products liability – defective design, defective manufacturing, and failure to warn (Counts 1-3); (2) negligent design (Count 4); (3) negligent manufacture (Count 5); (4) negligent failure to warn (Count 6); (5) breach of implied warranty of merchantability (Count 7); (6) breach of the implied warranty of fitness for a particular purpose (Count 8); (7) negligence (Count 9); and (8) punitive damages (Count 10). *Id*., ¶¶ 57-167.

## 2. Doug's Corner's claims against Textron, Inc. d/b/a E-Z-GO, Excel Tire & Wheel Corp., Denny Hoover, and Roxanne Hoover

On July 22, 2021, Doug's Corner filed a Third-Party Petition against Textron, Inc. d/b/a E-Z-GO, Excel Tire & Wheel Corp. ("Excel Tire"), Denny Hoover, and Roxanne Hoover, asserting the following claims: (1) statutory indemnification under Texas Civil Practices and Remedies Code Chapter 82 (E-Z-GO and Excel Tire); (2) strict products liability (E-Z-GO and Excel Tire); (3) breach of implied warranty of fitness for a particular purpose (E-Z-GO and Excel Tire); (4) breach of implied warranty of merchantability (E-Z-GO and Excel Tire); (5) negligence (E-Z-GO and Excel Tire); (6) negligence (Denny and Roxanne Hoover); and (7) contribution (E-Z-GO, Excel Tire, Denny Hoover, and Roxanne Hoover). *See* Doug's Corner's Third-Party Petition (Dkt. No. 15), ¶¶ 39-84 (hereinafter, "Third-Party Pet.").[3]

---

[3] Doug's Corner has also been granted leave to designate the following as responsible third parties: (1) Mark Bertel Construction, Inc.; (2) Bertel Construction Co., Inc.; (3) Bertel Mark J and Angela M Trustees a/k/a Bertel Mark J and Angela M Bertel Co Trustees; (4) Mark Bertel, Sr.; (5) Angela Bertel a/k/a Angie M. Bertel; (6) Erin Andeline; and (7) Daphne Andeline f/k/a Daphne Maycunich. *See* Dkt. No. 52.

7

In its Third-Party Petition, Doug's Corner contends the Subject Vehicle was designed, manufactured, marketed, and sold by E-Z-GO. *See* Third Party Pet., ¶ 25. Doug's Corner alleges that modifications were made to the Subject Vehicle which raised the vehicle's center of gravity and changed its handling and stability. *Id.*, ¶ 28. Doug's Corner also claims that E-Z-GO designed, manufactured, and sold the lift kits on the Subject Vehicle. *Id.*, ¶ 29. ("The E-Z-GO cart had at least four modifications, including . . . Premium 4'' E-Z-GO TXT lift kit. . . ."); *id.* ("Textron designed and manufactured the E-Z-GO cart, Premium 4'' E-Z-GO TXT lift kit . . . ."); *id.*, ¶ 31 ("The E-Z-GO cart and the subject modifications were designed, manufactured, and sold by Third Party Defendants Textron and/or Excel Tire."); *id.*, ¶ 33 (similar). Doug's Corner alleges it did not alter or otherwise incorporate the subject modifications into the cart. *Id.*, ¶ 35.

Doug's Corner relied on Plaintiffs' allegations from the Original Complaint to seek, among other things, statutory indemnity from E-Z-GO (and Excel Tire) under Chapter 82. *Id.*, ¶¶ 39-45. For example, Doug's Corner alleges "Third-Party Defendants' indemnity obligations under § 82.002 arise due to Plaintiffs' allegations that the E-Z-GO cart – with or without the subject modifications – and/or its subject modifications were defective and a proximate cause of the accident." *Id.*, ¶ 44. The Third-Party Petition also references Plaintiffs' allegation that "the subject modifications rendered the [Subject Vehicle] unreasonably dangerous as designed, manufactured, upgraded (assembled), and sold, which caused and/or contributed to Plaintiffs' injuries." *Id.*, ¶ 30.

Among other things, Doug's Corner alleges E-Z-GO was a "product manufacturer as such is defined by Chapter 82 of the Texas Civil Practice and Remedies Code," and that E-Z-GO "designs, manufactures, and/or sells transportation vehicles and their component parts, including but not limited to the E-Z-GO cart and/or subject modifications at issue in this case." *Id.*, ¶ 40. Doug's Corner alleges it was a "non-manufacturing seller" as defined by Chapter 82. *Id.*, ¶ 42.

On August 19, 2021, E-Z-GO filed its Answer to Doug's Corner, Inc.'s Third-Party Petition and Counterclaim, denying the allegations in the Third-Party Petition and asserting affirmative defenses. *See* E-Z-GO's Answer to Doug's Corner's Third-Party Petition and Counterclaim (Dkt. No. 25). E-Z-GO states it designed, manufactured, marketed, and sold the 2006 TXT golf cart at issue in Plaintiff's Original Complaint, "but did not perform the modifications to the vehicle that were in place at the time of the accident." *Id.*, ¶ 25. E-Z-GO states it designs, manufactures, and sells golf carts and component parts. *Id.*, ¶ 31.

In its counterclaim, E-Z-GO asserts the following claims against Doug's Corner: (1) breach of contract and indemnification; (2) negligence; (3) contribution; and (4) attorneys' fees. E-Z-GO's Counterclaim, ¶¶ 11-27. According to E-Z-GO, Doug's Corner and E-Z-GO first entered into a distribution agreement on or before 2011, wherein E-Z-GO appointed Doug's Corner as a non-exclusive dealer selling specific E-Z-GO products. *Id.*, ¶ 5. E-Z-GO alleges the agreement was revised and renewed as a Franchise Sales and Service Agreement in 2015 and again in 2018 ("Dealer Agreement"). *Id.* E-Z-GO further alleges the Dealer Agreement provides that Doug's Corner will indemnify E-Z-GO for losses and claims arising under the Dealer Agreement by third parties. *Id.*, ¶¶ 6-7. E-Z-GO further alleges as follows:

> Upon information and belief, Doug's Corner or its employees/agents modified the Subject Vehicle after E-Z-GO sold the golf car to Doug's Corner. These modifications include but are not limited to the installation of a flip seat, lift kit, larger tires, and other modifications. Further, Doug's Corner negligently maintained, operated, advertised, sold, or otherwise handled the Subject Vehicle after E-Z-GO sold the golf car to Doug's Corner.

*Id.*, ¶ 10.

### 3.    E-Z-GO's claims against Nivel Parts & Manufacturing Co., LLC f/k/a Jake's

On April 6, 2022, Fourth-Party Plaintiff E-Z-GO filed a Fourth-Party Complaint against Nivel, asserting the following claims: (1) statutory indemnification under Texas Civil Practices

and Remedies Code Chapter 82; (2) strict products liability; (3) breach of implied warranty of fitness for a particular purpose; (4) breach of implied warranty of merchantability; (5) negligence; and (6) contribution. *See* Textron's Original Fourth-Party Complaint (Dkt. No. 57), ¶¶ 45-80 (hereinafter, "Fourth-Party Compl.").

In its Fourth-Party Complaint, E-Z-GO alleges it designed, manufactured, marketed, and sold the "unmodified Subject Vehicle." *Id*., ¶ 29. According to E-Z-GO, the upgrades/modifications to the Subject Vehicle were made after the vehicle was sold by E-Z-GO and by an entity other than E-Z-GO. *Id.*, ¶ 30. E-Z-GO contends that Doug's Corner or its employees/agents modified the Subject Vehicle—including the installation of a front lift kit and rear lift kit—after E-Z-GO sold the golf car to Doug's Corner. *Id.*, ¶¶ 31-32. E-Z-GO also claims that Nivel or Jake's (which Nivel acquired) designed, manufactured, marketed, and sold lift kits for golf carts to Doug's Corner and designed, manufactured, and sold the rear lift kit that was installed on the Subject Vehicle (the "Subject Rear Lift Kit"). *Id.*, ¶¶ 35-39. The Fourth-Party Complaint also references Plaintiffs' allegation that the Subject Rear Lift Kit rendered the Subject Vehicle "unreasonably dangerous as designed, manufactured, upgraded (assembled), and sold, which caused and/or contributed to Plaintiffs' injuries." *Id.*, ¶ 40.

### D.    Nivel's Motion to Dismiss

In its Rule 12(b)(6) motion to dismiss, Nivel moves to dismiss all of E-Z-GO's claims against it for failure to state a claim upon which relief can be granted. First, Nivel asserts there is no plausible basis for E-Z-GO's claim under Texas Civil Practice and Remedies Code Chapter 82, which codifies an innocent seller's right to indemnity from a manufacturer. Dkt. No. 64 at 7. Second, Nivel states E-Z-GO does not claim to have been damaged by the Subject Rear Lift Kit and has no standing to assert claims based on Plaintiffs' alleged damages; thus, according to Nivel,

E-Z-GO has no plausible basis to assert strict product liability, breach of implied warranty for a particular purpose, breach of implied warranty of merchantability, or negligence claims (collectively "Tort Claims") against Nivel. *Id.* at 5, 8-10. Additionally, Nivel contends E-Z-GO's breach of warranty claims are barred by the statute of limitations because they were not asserted until more than four years after the sale of any relevant product. *Id.* at 11-12. Finally, Nivel submits E-Z-GO's contribution claim fails as a matter of law because a defendant can only seek contribution from a third-party based on joint contribution to the plaintiff's underlying claims. *Id.* at 12-13. According to Nivel, to the extent E-Z-GO has any liability in this matter, "it arises from E-Z-GO's own conduct and/or products E-Z-GO manufactured." *Id.* at 13.

## II.    LEGAL STANDARDS

### A.    FED. R. CIV. P. 14

Federal Rule of Civil Procedure 14(a) provides the basis for serving a third-party complaint: "[a] defending party may, as [a] third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." *Zix Corp. v. Echoworx Corp.*, No. 2:15-CV-1272-JRG, 2016 WL 7042219, at *2 (E.D. Tex. Apr. 14, 2016). The policy underlying Federal Rule of Civil Procedure 14 is to promote judicial economy by eliminating circuity of action. *Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, No. CIV.A. 303CV2392G, 2005 WL 2124126, at *3 (N.D. Tex. Sept. 1, 2005) (citing *Powell, Inc. v. Abney,* 83 F.R.D. 482, 485 (S.D.Tex.1979); *Crude Crew v. McGinnis & Associates, Inc.,* 572 F.Supp. 103, 109 (E.D.Wis.1983) ("The general purpose of Rule 14 is to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted.")).

In general, a third-party defendant may raise by motion any of the defenses enumerated in Rule 12(b), and the principles that govern the disposition of Rule 12(b) motions in other contexts apply under FED. R. CIV. P. 14 as well. *Id.* at *2 (citing 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE ("Wright & Miller") § 1455 (2d ed.1990) at 431-32).

### B.    FED. R. CIV. P. 12(b)(6)

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face.

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* at 664.

12

Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed. Appx. 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.    E-Z-GO'S CLAIM FOR STATUTORY INDEMNITY UNDER TEXAS CIVIL PRACTICE AND REMEDIES CODE CHAPTER 82

### A.    Parties' assertions

In its Fourth-Party Complaint, E-Z-GO alleges Nivel constitutes a "manufacturer" pursuant to Section 82.001 of the Texas Civil Practice and Remedies Code because Nivel designs, manufactures, and/or sells component parts for transportation vehicles, including but not limited to the "Subject Rear Lift Kit." Fourth-Party Compl., ¶¶ 42, 46. According to E-Z-GO, "Nivel's indemnity obligations under Section 82.002 arise[] due to Plaintiffs' allegations that the Subject Rear Lift Kit was defective and a proximate cause of the accident." *Id.*, ¶ 48.

In its motion to dismiss, Nivel argues E-Z-GO's claim for indemnity against Nivel under Chapter 82 "is fatally flawed because E-Z-GO was ***not a seller*** of any part manufactured by Nivel." Dkt. No. 64 at 7 (emphasis added). Specifically, Nivel first asserts neither Plaintiffs nor Doug's Corner allege that E-Z-GO was the seller of any product manufactured by Nivel. *Id.* (further noting that Doug's Corner alleges E-Z-GO was the manufacturer of the E-Z-GO cart and lift kits). Additionally, Nivel submits E-Z-GO admits it is not a seller of a product manufactured by Nivel

because E-Z-GO has alleged that Nivel "manufactured, marketed and **sold** the . . . Rear Lift Kit." *Id.* (emphasis added).

In its response, E-Z-GO asserts "Nivel ignores the broad scope of Chapter 82 and attempts to narrow the application of the statute by arguing that dismissal is appropriate because Plaintiffs, Doug's Corner, and E-Z-GO fail to allege that E-Z-GO was the seller of any product manufactured by Nivel." Dkt. No. 65 at 9. According to E-Z-GO, Plaintiffs and Doug's Corner incorrectly allege that E-Z-GO designed, manufactured, and sold the Subject Rear Lift Kit that was installed on the Subject Vehicle. *Id.* at 10. E-Z-GO disputes this allegation and asserts that Nivel – not E-Z-GO – designed, manufactured, and sold the Subject Rear Lift Kit that was installed on the Subject Vehicle. *Id.* E-Z-GO contends that under Texas law, "Nivel is required to indemnify and hold harmless E-Z-GO for any loss it incurs regarding the Subject Rear Lift Kit." *Id.*

Thus, Nivel's request to dismiss E-Z-GO's Chapter 82 indemnity claim rests to two related arguments: (1) that Plaintiffs and Doug's Corner have not alleged any defect in a rear lift kit manufactured by Nivel, and (2) that E-Z-GO cannot be an indemnified "seller" under Chapter 82 because E-Z-GO conceded in its pleading that it sold the Subject Cart **without** the rear lift kit (that E-Z-GO alleges was manufactured by Nivel) installed. *See* Dkt. No. 64 at 5, 7; Dkt. No. 66 at 5.

### B.    Applicable law

The Texas Products Liability Act (the "Act") gives the innocent seller of an allegedly defective product a statutory right to indemnity from the product's manufacturer for losses arising out of a products-liability action. *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 35–36 (Tex. 2016) (citing *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 491 (Tex. 2014)). This statutory right is "in addition to any duty to indemnify established by law, contract, or

otherwise." *Id.* at 36 (quoting Tᴇx. Cɪᴠɪʟ Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 82.002(e)(2)). The Act's indemnity provision provides as follows:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

*Id.* (quoting Tᴇx. Cɪᴠɪʟ Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 82.002(a)).

"Products liability action" is broadly defined as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product." *Id*. (quoting Tᴇx. Cɪᴠɪʟ Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 82.001(2)). The term includes "all direct allegations against the seller that relate to plaintiff's injury." *Id*. (quoting *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001)).

The "purpose of section 82.002 is to protect innocent sellers by assigning responsibility for the burden of products-liability litigation to product manufacturers." *Id*. (quoting *Petroleum Sols.*, 454 S.W.3d at 494). To that end, the duty to indemnify is triggered by allegations in the "injured claimant's pleadings" of a defect in the manufacturer's product, regardless of any adjudication of the manufacturer's liability to the claimant. *Id*. at 492-94 (citing *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc*., 199 S.W.3d 249, 255 (Tex.2006); also citing *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc*., 251 S.W.3d 481, 484 (Tex.2008) ("The manufacturer's duty begins when it is given notice that a seller has been sued.")). The manufacturer may "escape this duty to indemnify" by proving that the seller's "acts or omissions independent of any defect in the manufactured product cause[d] injury." *Id*. (quoting *Hudiburg*, 199 S.W.3d at 252, 255).

A manufacturer, as it relates to § 82.002(a), means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part of a product and who places the product or any component part of the

product in the stream of commerce. *Hartford Underwriters Ins. Co. v. Elite Spice, Inc.*, No. 3:10-CV-00466-P, 2012 WL 13026801, at *3 (N.D. Tex. Aug. 21, 2012) (citing TEX. CIVIL PRAC. & REM. CODE ANN. § 82.001(4) (West 2011))). A seller, as it relates to § 82.002(a), means a person who is engaged in the business of distributing or otherwise placing products, or component parts of products, in the stream of commerce for any commercial purpose. *Id.* (citing TEX. CIVIL PRAC. & REM. CODE ANN. § 82.001(3)). Therefore, the same party may be both a seller and manufacturer of the same product for purposes of § 82.002(a) indemnity because of the overlap in the definitions. *Id.* (citing TEX. CIVIL PRAC. & REM. CODE ANN. § 82.001(3), (4)). The Texas Supreme Court explained that, for purposes of § 82.002(a), every manufacturer is also a seller. *Id.* (citing *Hudiburg,* 199 S.W.3d at 256). But not all sellers are manufacturers, although a seller of a component will often qualify as a manufacturer under the statute. *Id.* (citations omitted).

The application of § 82.002(a) further depends upon a determination of whether a manufacturer or seller is "innocent" or not. *Id.* (citing *Hudiburg,* 199 S.W.3d at 256-67). When a party is a non-innocent party relating to a particular product liability action, it cannot assert a successful § 82.002(a) indemnity claim. *Id.* The Texas Supreme Court in *Hudiburg* explained as follows:

> [T]he manufacturer of a component product alleged by a claimant to be defective has a duty to indemnify an innocent seller/manufacturer of a finished product which incorporates the component from loss arising out of a products liability action related to the alleged defect, but the manufacturer of an allegedly defective finished product has a duty to indemnify the innocent seller/manufacturer of a component product for the same loss.

*Id.* (quoting *Hudiburg,* 199 S.W.3d at 256). "If neither the component-product manufacturer nor the finished-product manufacturer is innocent, depending not on allegations but on proof, both indemnity claims under the statute will fail." *Id.* (quoting *Hudiburg,* 199 S.W.3d at 256-57). "If

both are innocent, again depending on proof, the indemnity claims offset each other." *Id.* (quoting *Hudiburg,* 199 S.W.3d at 257).

The Texas Supreme Court further elaborated on this idea by noting, "it is unmistakable that the duty under Section 82.002(a) is premised on a nexus between a given manufacturer and its product." *Id.* (quoting *Owens & Minor, Inc.,* 251 S.W.3d at 485). "As the *Hudiburg* explanation makes evident, the effects of this statute depend primarily on determinations of whether the various parties are related to each other as 'sellers' or 'manufacturers' and whether the various parties are 'innocent' or not." *Id.*

### C. Discussion

**1.** **Nivel fails to show that Plaintiffs' product liability claims exclude the Subject Rear Lift Kit**

Nivel argues that E-Z-GO does not have standing to sue under Chapter 82, in part, because Plaintiffs' and Doug's Corner's complaints do not mention Nivel or a "rear lift kit" by name, but instead focus on modifications to the Subject Cart that E-Z-GO allegedly made (including the "Textron Premium 4'' E-Z-GO TXT lift kit and the E-Z-GO Seat Carrier Kit"). Dkt. No. 66 at 5. While Nivel may be correct that those pleadings do not mention "Nivel" or "rear lift kit," Nivel does not cite any authority requiring that level of specificity in the pleadings.

As an initial matter, E-Z-GO asserts that the lift kit Plaintiffs label as the "Textron Premium 4'' lift kit" is in fact Nivel's rear lift kit. *See* Dkt. No. 65 at 10 (stating that "Plaintiffs and Doug's Corner allege (incorrectly) that E-Z-GO designed, manufactured, and sold the Subject Rear Lift Kit that was installed on the Subject Vehicle" and citing to Orig. Compl., ¶¶ 22-23, which identifies the lift kit on the back of the cart as the "Textron's Premium 4'' E-Z-GO TXT lift kit"). E-Z-GO identifies this at-issue lift kit as the "Subject Rear Lift Kit" and alleges it was designed, manufactured, and sold by Nivel. *See, e.g.*, Dkt. No. 65 at 1 ("The Subject Vehicle was sold,

17

unmodified by E-Z-GO, to Doug's Corner . . . . The post-sale modifications to the Subject Vehicle included the instillation of a rear lift kit that was designed, manufactured, and sold by Nivel (the 'Subject Rear Lift Kit')"). Dkt. No. 65 at 1, 5-6 (similar), 9 ("Plaintiffs and Doug's Corner allege that E-Z-GO manufactured, designed, and supplied the lift kits that were installed on the Subject Vehicle . . . [but E-Z-GO claims] that Nivel designed, manufactured, marketed, and sold the Subject Rear Lift Kit that was later incorporated into the Subject Vehicle"); Dkt. No. 67 at 1-3. It is not clear whether E-Z-GO is alleging that Plaintiffs simply mislabel the kit or whether it was rebranded as Textron's, but naming issues aside, Plaintiffs' allegations include the lift kit identified in ¶ 23 of the Orig. Compl., which E-Z-GO sufficiently pleads as Nivel's.

Even if the "Textron Premium 4'' lift kit" and the "Subject Rear Lift Kit" are distinct features, Plaintiffs' complaint, when read in the light most favorable to the non-movant, E-Z-GO, includes claims against the Subject Rear Lift Kit. *See Bowlby*, 681 F.3d at 219. First, Plaintiffs' complaint makes references to lift kits generally, regardless of whether the kits were installed before and after Doug's Corner acquired the cart from E-Z-GO. *See* Orig. Compl., ¶ 48 ("The subject 2006 E-Z-GO TXT Upgraded Cart and lift kit were defective and unreasonably dangerous when it was sold by Defendant Doug's Corner"); ¶ 50 ("Installing the lift-kit Defendant Doug's Corner upgraded the 2006 E-Z-GO TXT Cart at issue was a substantial causal factor in producing Plaintiffs' injuries"); *see also id.*, ¶¶ 53, 94 (referring to "lift kit[s]" more generally). That Plaintiffs did not specifically identify "Nivel" or "rear lift kit" by name is not dispositive. *See Hudiburg*, 199 S.W.3d at 257 ("Like the court of appeals, we do not agree with Rawson–Koenig that a claimant's pleadings must actually name a manufacturer to invoke a right of indemnity under section 82.002."). Nivel presents no persuasive authority requiring Plaintiffs, at this point in the litigation, know and plead the full modification history of the golf cart prior to acquiring it.

Second, there is no indication that by naming certain upgrades, the allegations were carving out other upgrades. *See, e.g.*, Orig. Compl., ¶ 22 (identifying "at least" the named features); *see also id.*, ¶¶ 42-50 (alleging the cart was unsafe "before and after the upgraded features"). Doug's Corner's third-party complaint also does not limit is allegations exclusively to the upgrades identified by name. *See, e.g.*, Third-Party Pet., ¶ 44 ("Third-Party Defendants' indemnity obligations under § 82.002 arise due to Plaintiffs' allegations that the E-Z-GO cart – with or without the subject modifications – and/or its subject modifications were defective and a proximate cause of the accident."). Instead, the underlying pleadings allege injury based on the alleged defective design of the upgraded E-Z-GO cart as it existed at the time of the injury. *See, e.g.*, Orig. Compl., ¶¶ 94, 95.

In sum, Plaintiffs' and Doug's Corner's complaints allege a defect in a lift-kit, which E-Z-GO's fourth-party complaint contends was manufactured by Nivel. Nivel's argument that it should be dismissed because those complaints identify the lift kit as an E-Z-GO device raises at most a fact issue that is insufficient to support a motion to dismiss.

## 2.     Nivel fails to show E-Z-GO is not a "seller" as a matter of law

Nivel does not dispute it is a "manufacturer" under the Act, but it argues that E-Z-GO is not a "seller." Dkt. No. 66 at 4. E-Z-GO's status as a "seller" is a prerequisite for it to be indemnified under the statute. *See Centerpoint Builders*, 496 S.W.3d at 36 (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc*., 996 S.W.2d 864, 867 (Tex.1999) ("Anyone who qualifies as a 'seller' may seek indemnification, subject to the limitations of section 82.002(a).")).

Nivel relies on E-Z-GO's pleading, wherein E-Z-GO asserts Nivel supplied the rear lift modification, to argue that "[i]t is undisputed that E-Z-GO is not now, nor has it ever been, a seller of any Nivel products." Dkt. No. 66 at 5 (citing E-Z-GO's response, which itself cites E-Z-GO's

fourth-party complaint, Dkt. No. 57, ¶ 39).  But as E-Z-GO explains in its sur-reply, the specifics of the lift kit, including its name and who installed it, *are* disputed: "both Plaintiffs and Doug's Corner allege that E-Z-GO designed, manufactured, and sold the Subject Rear Lift Kit." Dkt. No. 67 at 1 (citing Plaintiffs and Doug Corner's pleadings). Further, case law establishes that a component-product manufacturer's potential indemnity to a finished product's manufacturer—or vice-versa—will also involve determining which party is "innocent," an inquiry to be determined "not on allegations but on proof." *Hudiburg*, 199 S.W.3d at 256–57. The factual record will need to be developed to determine who was responsible for the allegedly deficient lift kit modification and/or cart.

Nivel's cited authority does not support a different outcome. Nivel relies on *Centerpoint* to "demonstrate[] why E-Z-GO is not a seller within the meaning of Chapter 82." Dkt. No. 66 at 4 (citing *Centerpoint*, 496 S.W.3d 33 (Tex. 2016)). The holding in *Centerpoint* followed summary judgment motions and held that the question of whether a party is a seller "depends upon the specific facts at issue." *Id.* at 41 (relying on the "evidence" and "record" to determine that "Centerpoint is not a 'seller' under the Products Liability Act."). *Centerpoint* expressly rejects Nivel's argument that the Court can rely solely on the pleadings to grant its motion to dismiss. *Id.* at 37, n.3 ("To the extent any question lingers as to whether the pleadings trigger seller status rather than the facts and evidence, we answer that question in the negative. Our precedent consistently determines seller or manufacturer status based on the evidence, and nothing in section 82.002(a) or the statute's purpose supports allowing the pleadings to dictate whether a party qualifies as a manufacturer or seller.").

Nivel cites two other cases to support its argument why E-Z-GO is not a seller (Dkt. No. 66 at 4, citing *PS Investments, L.P. v. Southern Instrument & Valve Co.*, 438 S.W.3d 638, 641 and

643 (Tex. App. – Houston 2014) and *F&F Ranch v. Occidental Chem. Corp.*, No. 14–09–00901–CV, 2011 WL 1123402 (Tex.App.-Houston [14th Dist.] Mar. 29, 2011, no pet.) (mem. Op.)), but both of those cases resolved the question of whether a party was a "seller" following motions for summary judgment, not a motion to dismiss. The court in *PS Investments* determined there was not enough record evidence to show PS Investments (formally known as Paradigm) was a "seller" of third-party valve it repaired on behalf of the third party. *PS Invs., L.P.*, 438 S.W.3d at 639, 642. Nivel fails to persuasively explain how that holding supports its motion to dismiss here. Nivel quotes *F&F Ranch* for the proposition that "the party seeking indemnity must provide the defective product as part of its sales and services[,]" but the court was addressing the issue of whether a party who provides a service *and* sells a product can be considered a "seller"—it was not addressing the issue here, which is whether E-Z-GO can be considered a seller when its pleadings assert Nivel's rear seat lift kit was added after E-Z-GO sold the cart. *See F&F Ranch*, 2011 WL 1123402, at *4, n.8.

The Court is unaware of authority addressing the precise facts here, but the reasoning of several cases supports denying Nivel's motion. In *Smith*, the plaintiffs, survivors of the deceased, brought a product liability action against Home Depot and others, initially alleging that Home Depot sold a defective generator which emitted deadly levels of carbon monoxide. *Smith v. Robin Am., Inc.*, 773 F. Supp. 2d 708, 710 (S.D. Tex. 2011), *aff'd*, 484 Fed. Appx. 908 (5th Cir. 2012). The plaintiffs later voluntarily dismissed their claims against Home Depot because Home Depot did not sell the model generator at issue in the plaintiffs' claims. *Id*. at 712. Home Depot, as cross-plaintiff, moved for summary judgment on its cross claims for statutory indemnity against Subaru-Robin and Fuji USA, both of whom allegedly manufactured the generator. *Id.* at 710, 713 (noting

Subaru-Robin and Fuji USA denied they manufactured the generator at issue and further noting the evidence showed the generator was manufactured by Powermate).

The court declined to interpret the statute "so far as to require a party wrongly accused of having manufactured an allegedly defective product to indemnify a party wrongly accused of having sold it." *Id.* at 713. The court thus found that neither Subaru-Robin nor Fuji USA qualified as a "manufacturer" under § 82.001(4). *Id.* While the court denied Home Depot's request for indemnification based on those facts, it nevertheless explained that "Home Depot is correct that a manufacturer has a duty to indemnify a party wrongly accused of having sold an allegedly defective product," *Smith*, 773 F. Supp. 2d at 713 (citing, among others, *Fitzgerald*, 996 S.W.2d 864), which mirrors the allegations here (*i.e.*, E-Z-GO asserts it is wrongly accused of selling a cart with Nivel's rear lift kit modification).

In *Fitzgerald*, the Texas Supreme Court considered the following certified question from the United States Court of Appeals for the Fifth Circuit:

> Whether the Texas Products Liability Act of 1993, Tex. Civ. Pract. & Rem. Code Ann. § 82.002, requires a manufacturer of an injuring product to indemnify a retailer that was forced to defend itself in products liability litigation even though the retailer, who sold products of the same or similar type involved in the suit, did not sell the particular product claimed to have harmed the underlying plaintiff.

*Fitzgerald*, 996 S.W.2d at 865. The Texas Supreme Court answered the question in the affirmative, which tends to undercut Nivel's position. *Id.*

The plaintiffs in *Fitzgerald* sued the manufacturer of an allegedly defective spinal fixation device, and numerous sellers, including Fitzgerald. *Id.* at 865. While Fitzgerald sold such devices, the evidence showed he did not sell the particular products implanted in the plaintiffs in the lawsuit. *Id.* Fitzgerald was dismissed from the injury case but then sought indemnity for its litigation expenses. *Id.* On appeal, the manufacturer argued that Fitzgerald is not a seller because he was

"not in the chain of distribution from the manufacturers to the injured plaintiff." *Id*. The court rejected that argument and held that the statute does not require the seller be proven to be part of the chain of distribution, and that reading in such a requirement would "conflict[]" with another section of the statute. *Id*. at 867. While it is not clear if the court would have reached the same result if Fitzgerald had not ever sold the allegedly defective product, the court's reasoning supports denying Nivel's motion to dismiss because it allows a party to seek indemnification from the manufacturer of an allegedly defective product, even though the party never sold the product at-issue in the case.

As explained above, the Court does not find as a matter of law that Plaintiffs' pleadings do not include an allegation that the rear lift kit itself was defective within the meaning of § 82.002. Plaintiffs' pleadings do not have to actually name a manufacturer to invoke a right of indemnity under § 82.002. *Hudiburg*, 199 S.W.3d at 257. Whether or not Nivel is a "manufacturer" of the product or any component part is an issue better resolved at summary judgment. *See, e.g.*, *Sherman v. Shanghai First Meridian Int'l Trading Co.*, No. CV H-07-0050, 2008 WL 11391637, at *6 (S.D. Tex. Mar. 7, 2008), *report and recommendation adopted*, No. CV H-07-0050, 2008 WL 11391628 (S.D. Tex. Mar. 28, 2008) ("The **summary judgment evidence** leaves no question that DAS designed only the artwork and warning and was, at most, the manufacturer of those component parts. Because the factual allegations in Plaintiff's complaint do not lend themselves to a finding that either of the component parts that DAS manufactured were allegedly defective, DAS has no duty to indemnify Love's under the statutory provisions.") (emphasis added).

For all these reasons, the Court recommends Nivel's motion to dismiss E-Z-GO's claim for statutory indemnification pursuant to Texas Civil Practice and Remedies Code Chapter 82 be denied. The Court now considers Nivel's motion to dismiss E-Z-GO's remaining claims.

## IV.    E-Z-GO'S REMAINING CLAIMS

### A.    E-Z-GO's "tort" and contribution claims against Nivel

In counts two through five of its Fourth-Party Complaint, E-Z-GO alleges claims of strict products liability, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and negligence, all of which Plaintiffs alleged against Doug's Corner and which Doug's Corner alleged in its Third-Party Petition against E-Z-GO. In count six, after incorporating by reference all of the allegations contained in the Fourth-Party Complaint, E-Z-GO asserts a claim of contribution against Nivel "for any and all damages awarded to Plaintiffs as a result of this suit in accordance with Chapter 33 of the Texas Civil Practice and Remedies Code." Fourth-Party Compl., ¶¶ 79-80.

### B.    Parties' assertions

Nivel moves to dismiss E-Z-GO's claims of strict products liability, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and negligence (collectively "Tort Claims"). According to Nivel, E-Z-GO does not claim to have been damaged by the Subject Rear Lift Kit and has no standing to assert Tort Claims based on Plaintiffs' alleged damages. Dkt. No. 64 at 5, 8-10. Additionally, Nivel contends E-Z-GO's breach of warranty claims are barred by the statute of limitations because they were not asserted until more than four years after the sale of any relevant product. *Id.* at 11-12.

Nivel further moves to dismiss E-Z-GO's contribution claim. Specifically, Nivel submits E-Z-GO's contribution claim fails as a matter of law because a defendant can only seek contribution from a third-party based on joint contribution to the plaintiff's underlying claims. Dkt. No. 64 at 12-13. According to Nivel, to the extent E-Z-GO has any liability in this matter, "it arises

from E-Z-GO's own conduct and/or products E-Z-GO manufactured." *Id.* at 13. In its reply, Nivel asserts as follows:

> To be clear, E-Z-GO has been sued for its own conduct relating to its own products. There is not a single allegation in either Plaintiffs' Original Complaint or [Doug's Corner's] Third-Party Complaint that even suggests that any Nivel part played any role in the cause of the accident. In their Original Complaint, Plaintiffs identified a specific list of parts that they allege contributed to the accident. *See Pltf's Org. Compl.* ¶22 (Doc. 1). These parts were designed, manufactured, and sold by E-Z-GO and Excel Tire & Wheel. There is no allegation in either Plaintiffs' Original Complaint or [Doug's Corner's] Third-Party Complaint that any Nivel part failed, that any Nivel part was incorrectly manufactured, that any Nivel part was defectively designed, that any Nivel warning was inadequate, or that any Nivel part or a so-called "rear-lift kit" played any role in the August 2, 2016 accident. As contribution is purely derivative of the plaintiffs' right to recover, and there is no possibility (or allegation) that Nivel could be potentially liable to either Plaintiffs or [Doug's Corner], E-Z-GO's claim of contribution should be dismissed under Rule 12(b)(6).

Dkt. No. 66 at 9.

### C.    Applicable law

A claim for contribution under Texas Civil Practice and Remedies Code § 33.015 is "derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought" and depends upon whether the original plaintiff has the right to recover damages from the party from whom the defendant seeks contribution. *TransCanada USA Operations, Inc. v. Michels Corp.*, No. CV H-18-4483, 2019 WL 7372164, at *5 (S.D. Tex. Dec. 31, 2019) (quoting *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992); also citing *Werner v. KPMG LLP*, 415 F. Supp. 2d 688, 706 (S.D. Tex. 2006) ("Section 33.015 applies when a defendant asserts contribution rights as between codefendants; Section 33.016 applies when a defendant asserts contribution rights against others not sued by the plaintiff.")).

Contribution is allowed in Texas only among joint tortfeasors. *Samsung Elecs. Am., Inc. v. Yang Kun "Michael" Chung*, No. 3:15-CV-4108-D, 2018 WL 1532383, at *6 (N.D. Tex. Mar. 29,

2018) (quoting *CBI NA-CON, Inc. v. UOP Inc.*, 961 S.W.2d 336, 339 (Tex. App. – Houston [1st Dist.] 1997, pet. denied)). Where contribution is available, for the party seeking contribution to have a right to it, the party from whom contribution is sought "must have some real or potential liability in damages to the plaintiff." *Id.* (quoting *CBI NA-CON, Inc.*, 961 S.W.2d at 339 (citing TEX. CIV. PRAC. & REM. CODE ANN § 33.016(a))). "A defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought." *Id.* (quoting *CBI NA-CON, Inc.*, 961 S.W.2d at 339 (citing *Shoemake v. Fogel*, 826 S.W.2d 933, 935 (Tex. 1992))).

Rule 14(a) provides that a defending party, as a third-party plaintiff, may sue "a nonparty who is or may be liable to it for all or part of the claim against it." *Id.* at *9. The policy underlying Rule 14 is to promote judicial economy by eliminating circuitous actions. *See* 6 Wright & Miller, *supra*, § 1442, at 339. Impleader is appropriate, however, "only in cases where the third party's liability [is] in some way derivative of the outcome of the main claim." *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967); *see also Am. Express Travel Related Servs. Co. v. Beaumont*, 2002 WL 31298867, at *2 (N.D. Tex. Oct. 9, 2002) (Buchmeyer, J.) ("[T]he procedural device of impleader [may only be used] when the third party defendant's potential liability is dependent upon the outcome of the main claim.").

In other words, "the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery." *Joe Grasso & Son*, 380 F.2d at 751. "The third-party procedure is not designed as a vehicle for the trying together of separate and distinct causes of action, or for the introduction, into the main action, of several parallel, but independent, actions, or separate and independent claims [.]" *Majors v. Am. Nat'l Bank of Huntsville*, 426 F.2d 566, 568 (5th Cir. 1970) (per curiam) (internal quotation marks and citations omitted). If the third-party claim is an entirely

independent claim, it will be dismissed even if it arises from the same set of facts as the original claim. *See Baylor*, 2005 WL 2124126, at *4 (citing *Joe Grasso & Son*, 380 F.2d at 751). That is, third-party practice is proper under Rule 14 only if the third-party defendant is or may be liable to the defendant for all or part of the plaintiff's recovery, or the defendant attempts to pass on to the third party all or part of the liability asserted against the defendant. *Id.*

### D.    Discussion

To the extent E-Z-GO attempts to assert independent tort claims against Nivel, the claims would be appropriate for dismissal. However, E-Z-GO's briefing indicates the Tort Claims, although contained in separate counts of the Fourth-Party Complaint, are derivative of its indemnification (or contribution) claims and are based on the allegations contained in the Original Complaint and Third-Party Petition. *See* Dkt. No. 67 at 4. The Fourth-Party Complaint seeks indemnity and contribution based on allegations that the Fourth-Party Defendant's actions caused Plaintiffs' injuries, and thus there are no alleged separate and independent Tort Claims. The Court therefore finds without merit Nivel's argument that E-Z-GO lacks standing in this fourth-party action because E-Z-GO did not allege an injury.[1] *See Baylor Univ. Med. Ctr.*, 2005 WL 2124126, at *4 (stating "third-party practice under Rule 14 does not require imminent injury" and further explaining third-party actions are proper even though the third-party defendant's liability is contingent).

Turning to E-Z-GO's contribution claim, Nivel asserts Texas law requires parties to be "joint tortfeasors" to establish a right to contribution. Nivel submits Doug's Corner's claims against E-Z-GO do not arise from, or even mention, Nivel's conduct or any product manufactured

---

[1] Because the Fourth-Party Complaint's allegations in counts two through five are not separate and independent Tort Claims against Nivel but are derivative of E-Z-GO's contribution claim, the Court need not consider Nivel's alternative argument that E-Z-GO's breach of warranty claims are barred by the statute of limitations.

by Nivel. Dkt. No. 64 at 13. Nivel asserts neither Plaintiffs nor Doug's Corner alleges a "rear lift kit" had any causal connection with the accident. Dkt. No. 66 at 8. According to Nivel, Plaintiffs (and, by extension, Doug's Corner) "were very specific in identifying which parts of the golf cart they considered to be defective and played a role in the August 2, 2016 accident," naming E-Z-GO's "Premium 4'' E-Z-GO TXT lift kit, which was designed, manufactured, and supplied to Defendant Doug's Corner by E-Z-GO." *Id*.

According to E-Z-GO, its pleadings provide sufficient factual information that, if true, establish E-Z-GO may plausibly recover for contribution from Nivel. Dkt. No. 67 at 5. E-Z-GO further asserts the issue of joint liability should not be decided at the motion to dismiss stage. *Id.* E-Z-GO argues as follows:

> In its Reply, Nivel inexplicably doubles down on its position that this Court may determine that E-Z-GO and Nivel could not be considered joint tortfeasors as a matter of law at the Rule 12(b)(6) stage. *See* Reply at 8-9. In so doing, Nivel asks this Court to adjudicate disputed facts, asserting that "E-Z-GO has been sued for its own conduct relating to its own products." Reply at 9. But that is not what E-Z-GO contends. E-Z-GO contends that it is being sued for alleged defects in one of Nivel's products—the Subject Rear Lift Kit. *See* Response at 12-13; Fourth-Party Compl., ¶¶ 29-40. Assuming these facts to be true, E-Z-GO's pleadings raise fact question as to whether Nivel and E-Z-GO could be considered joint tortfeasors. Rather than concede this simple issue, Nivel essentially asks the Court to ignore E-Z-GO's pleadings and agree that no "'rear-lift kit' played any role in the [Plaintiffs'] August 2, 2016 accident" in this product liability case. *See* Reply at 9. Nivel's impractical, form-over-substance parsing of the factual allegations in Plaintiffs' Complaint, Doug's Corner's Third-Party Petition, and E-Z-GO's Fourth-Par[t]y Complaint provides this Court with no undisputed fact from which the Court could grant Nivel's Motion to Dismiss.
>
> Because Plaintiffs' and Doug's Corner's allegations encompass the Subject Rear Lift Kit, as alleged in E-Z-GO's Fourth-Party Complaint, E-Z-GO has properly pled a claim for contribution from Nivel for any and all damages awarded to Plaintiffs based on the Subject Rear Lift Kit in accordance with Chapter 33.

*Id.* at 5-6.

The Court agrees that the allegations in the pleadings of Plaintiffs and Doug's Corner encompass a lift kit that E-Z-GO alleges was supplied by Nivel. *See* Section II.C.1 above. Section 33.016 broadly permits a party to assert contribution claims against any party "with respect to any portion of damages for which that party may be liable," before the plaintiff has asserted a claim against that party. *Werner*, 415 F. Supp. 2d at 707. Chapter 33.016(a) defines a "contribution defendant" as "any defendant, counterdefendant, or third-party defendant from whom any party seeks contribution with respect to any portion of damages for which that party may be liable, but from whom the claimant seeks no relief at the time of submission." *Holloman Corp. v. N2 Sols. LLC*, No. CV H-19-4344, 2022 WL 2277508, at *2 (S.D. Tex. June 24, 2022) (citing Tex. Civ. Prac. & Rem. Code § 33.016(a)). The Court is not convinced at this time that E-Z-GO could not plausibly recover for contribution against Nivel on a claim that could be brought against Nivel. Therefore, the Court recommends Nivel's motion to dismiss E-Z-GO's contribution claim pursuant to Texas Civil Practice and Remedies Code Chapter 33 be denied.

## V.    RECOMMENDATION

Based on the foregoing analysis, it is hereby

**RECOMMENDED** that Fourth-Party Defendant Nivel Parts & Manufacturing Co., LLC's Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Supporting Brief (Dkt. No. 64) be **DENIED.**

### Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 31st day of August, 2022.


_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE

30